UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NUMBER: 06-2657-CIV-SEITZ/McAliley

VERNON ROBERTS,

    Plaintiff,

v.

CITY OF HIALEAH, ET AL.,

    Defendants.
_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

    Plaintiff, by and through the undersigned counsel, files this Memorandum of Law In Opposition To Defendants' Motions For Summary Judgment as follows:

**I. DEFENDANT CITY'S MOTION AS TO COUNT I (BATTERY) AND DEFENDANT PUCCIO'S MOTION AS TO COUNT VII (BATTERY) SHOULD BE DENIED IN THAT THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER DEFENDANT PUCCIO'S USE OF HIS CANINE WAS A CLEARLY EXCESSIVE USE OF FORCE BECAUSE HE FAILED TO STOP THE BITING AFTER PLAINTIFF WAS NO LONGER A THREAT AND WAS NOT RESISTING OR FLEEING**

    An arresting officer is liable for damages under a battery cause of action if the force that is used is clearly excessive. *City of Miami v. Sanders, 672 So. 2d 46 (Fla. 3d DCA 1996. See Jennings v. City of Winter Park, 250 So. 2d 900 (Fla. 4th DCA 1971). Mazzilli v. Doud, 485 So. 2d 477, 481 (Fla. 3d DCA 1986.* The test for a battery claim for excessive force focuses upon whether the amount of force used was reasonable under the circumstances. *Dixon v. State, 101 Fla. 840, 132 So. 684 (1931)*; City *of Miami v. Albro, 120 So. 2d 23 (Fla. 3d DCA 1960)*; *Hutchinson v. Lott, 110 So. 2d 442 (Fla. 1st DCA 1959), cert. denied, 115 So. 2d 415 (Fla. 1959).* If the officer "reasonably believes [the force] to be necessary to defend himself or another from bodily harm while making the arrest, he is not liable" *§ 776.05(1), Fla. Stat. (1995). Mazzilli v. Doud, 485 So. 2d 477, citing the statute.*

    Whether an officer's use of force in making arrest rose to the level of a battery is

question of fact for the jury. *Hutchinson v. Lott, supra* [1] It is the jury that is the final arbiter of the amount of force which can properly be used under the particular circumstances. *Hutchinson.* The measure of necessary force is generally considered to be that which an ordinary prudent and intelligent person, with the knowledge and in the situation of the arresting officer, will have deemed necessary under the circumstances. *Cf. Dixon v. State, 101 Fla. 840, 132 So. 684 (1931)*(the jury must judge of the necessity and not the officer. If the amount used is more than the occasion requires, he is criminally liable for the excess).

The question of fact in this case centers on the circumstances presented to defendant Puccio. It is for a jury to determine what those circumstances were and then whether he acted reasonably. Plaintiff claims that while being bitten on his right arm, he was not resisting, was not a threat to anyone and was not fleeing anywhere. (Statement of Facts 7-18). At that point, he testified he was lying on the ground and not moving. Under those circumstances, virtually all witnesses agree it was an unreasonable and excessive force for the bite to continue. (Statement of Facts 46-47).

It is not a question of the precise time the bite continued after Plaintiff was subdued. The only question is whether the biting continued at all beyond the point of being subdued. If a jury finds it did, then it may find Puccio's use of the dog to be a clearly excessive issue of force. Alternatively, Plaintiff contends that a jury could believe Puccio's description of Plaintiff's behavior (sitting on ground trying to use one hand to push against the ground) and yet it still could find it was unreasonable for Puccio to believe that continued biting was necessary to effect the arrest. (Statement of Facts 50-60).

Defendant Puccio's claim, citing *Epstein v. Toys-R-Us Delaware, Inc., 277 F.Supp. 2d 1266, 1275 (S.D.Fla. 2003)* and *Borges v. City of West Palm Beach, 1994 WL 397301 (S.D.Fla. 1994)* that contact "incident" to an arrest cannot form the basis of a claim for battery is wrong because a key adjective is omitted. Those decisions hold that the offensive touchings which take place as <u>ordinary</u> incidents of an arrest do not give rise to an independent tort of battery. However, in this case, Plaintiff claims that the

---

[1] Overruled on other grounds in *Bobenhausen v. Cassat Ave. Mobile Homes, Inc., 344 So. 2d 279, 281 (Fla. 1st DCA 1977)*

2

force of the continued bite beyond the point of surrender was neither ordinary nor incidental, but rather was excessive and extraordinary and ergo, a battery.

*Epstein* is also distinguishable because there plaintiff who had no recollection of the arrest itself and failed to point to *any* facts which would dispute the officers' testimony. That's why Epstein was unsuccessfully attempted to rely on the mere fact that he was injured. However, here, Plaintiff has pointed to *facts in the record* that indicate that the force used in response to his conduct (of non- resistance and non-flight) was excessive.

Since the same *Graham*[2] factors are typically used to decide excessive force cases under both battery and 1983 theories, the discussion in section II of this Memorandum is equally applicable to prevent entry of summary judgment on the battery claim. See *Thompson v. Douds, 852 So. 2d 299, 305 (Fla. 2d DCA 2003 , review denied, 871 So. 2d 872. Sullivan v. City of Pembroke Pines, 161 Fed. Appx. 906, 911 (11th Cir. 2006).*

Defendants' motions on Plaintiff's battery claims should be denied in that there are genuine issues of material fact as to whether defendant Puccio's use of his canine was a clearly excessive use of force because he failed to stop the biting after plaintiff was no longer a threat and not resisting or fleeing.

**II. DEFENDANT PUCCIO'S MOTION AS TO COUNT XI (1983) SHOULD BE DENIED IN THAT  THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER DEFENDANT'S USE OF HIS CANINE WAS AN EXCESSIVE USE OF FORCE BECAUSE HE FAILED TO STOP THE BITING AFTER PLAINTFF WAS NO LONGER A THREAT,  AND WAS NOT RESISTING OR FLEEING  [3]AND WHETHER THERE IS QUALIFIED IMMUNITY BECAUSE THE LAW IS CLEARLY  ESTABLISHED THAT ALLOWING A TRAINED POLICE DOG TO BITE AND TEAR AFTER THE SUSPECT NO LONGER PRESENTED A THREAT WAS A VIOLATION OF FEDERAL LAW.**

The photos, medical records and Plaintiff testify to a serious injury, not a minor dog bite. Plaintiff paid for his crime in the criminal justice system. Plaintiff does not dispute his guilt nor the initial necessity of the canine to bring him to surrender. It is only

---

[2] The severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

[3] This argument applies to the battery claims against both defendants in that it demonstrates that there is a question of fact as to whether Puccio's use of the dog was a clearly excessive use of force.

3

for what came immediately afterwards for which he claims damages here. For what came after could be considered street justice proscribed by the constitution and Florida tort law.

Plaintiff says that once he was bitten on his right arm, he surrendered for all intents and purposes and his behavior was fully consistent with surrender: lying on the ground and not moving except for the involuntary force of the biting and pulling of the dog's jaw on his arm. His behavior showed no resistance, no threats and no fleeing. The law has been clearly established and no one disputes that under this type of circumstance, continued biting was unnecessary, excessive and a constituted a constitutional violation.

Defendants argue that what Plaintiff has described about the circumstances of this bite are self serving and unreasonable. Yet, the defendant would have us believe him merely because he is the defendant! Isn't it also self serving for Defendants to omit key parts of the testimony in this case: For example, Defendant City's recitation of the facts (Memo, p.2-3) omits the following: Robert's testimony, confirmed by Officer Niebla that when confronted, he said he was unarmed and lifted up his shirt to show he had no weapon; that Roberts denied hearing any warnings; that Roberts never challenged any cop to shoot him; Robert's testimony that during the entire time the dog was biting his right arm he was laying on the ground and not resisting, fleeing or even moving; Puccio's testimony that Plaintiff remained on the ground the entire time the dog was biting his right arm and his "sole resistance" was pushing his other arm against the ground; Sergeant Gross testimony that Plaintiff was subdued the entire time that he was on the ground; Robert's and Gross' testimony that another officer went over the fence before Puccio; Plaintiff's testimony that enough time went by for other officers to stand around laughing and encouraging the attack; that the time of the bite on the right arm appeared to be excessive to both Roberts and Gross. (Statement of Facts: 7-18, 20, 23, 30). On a final note, where is School Board Sergeant Gross' motivation to deviate in his testimony from the facts that he observed? Defendants have no good answer to his testimony that Roberts was subdued when the dog was biting him and it seemed to last for an extended period of time.

Defendant City misreads Plaintiff's testimony regarding which arm was most

4

damaged and how the biting occurred. A careful reading of the Roberts deposition at 61/5-62/8 shows the right arm was most injured by a single bite with holding and pulling by the dog. Second, the City improperly attempts to cherry pick the testimony most favorable to is position from Roberts and others instead of viewing all of the evidence in the light most favorable to Plaintiff from any source as it must. *Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997)*(record should be taken as a whole). Third, the City's attempt to marginalize Plaintiff's testimony by characterizing it repeatedly as "allegedly" does not make that testimony disappear. It creates a question of fact and does not go up in smoke simply because the City disagrees with it. Plaintiff clearly states he was compliant, and no longer resisting. For the defendants to respond that Puccio's actions were reasonable "under every standard" simply does not make it so.

A review of the case law in light of the facts set forth in the Statements of Fact shows that summary judgment should be denied. This review begins with a case which the defendants and their counsel are certainly familiar and which is highly persuasive. *Bolanos v. Bain 696 So. 2d 478(Fla. 3rd DCA 1997).* What the court held in *Bolanos,* among other things, is that where there is a evidence that a police dog continues to bite after the point that a suspect is no longer a threat, as in the case at bar, jury issues are presented as to whether there was an unconstitutional excessive force and if so, whether there was qualified immunity.

In *Bolanos,* a canine locked its jaws around Bain's arm. When the officer determined Bain was unarmed and posed no threat, he released the dog. The cop estimated this was about 8 seconds later. Bain testified that the dog was biting him for 5 minutes and as here, none of the officers asked him to surrender and other officers encouraged the continued attack.

The court analyzed the issue of qualified immunity to determine whether defendant's conduct violated a clearly established law. The Court held, inter alia:

> " According to Gracia the dog bit Bain for no more than a few seconds. Bain testified that the dog was biting him for five minutes, during which time Gracia, Burke and Lublinski laughed and encouraged the dog to continue the attack. Although improbable, if true, Bain's claim would be sufficient to overcome Gracia's defense of qualified immunity. <u>It is clear to us that all reasonable police officers, at the time of these events, would have known that allowing a trained police dog to bite and tear at a suspect's arm, after the suspect no longer presented</u>

<u>a threat to the officers was a violation of federal law</u>. *Kerr, supra.* <u>Consequently, as concerns any injuries suffered by Bain after he was pulled out of the bushes by the dog and clearly incapable of harming the police officers, we find that Gracia is not protected by qualified immunity."</u> (emphasis added)

Now, in the case at bar, Plaintiff similarly claims that all reasonable police officers, at the time of these events, would have known that allowing a trained police dog to bite and tear at his arm after he no longer presented a threat to the officers was a violation of federal law. True, the officers say he was a threat. Plaintiff denies that. This is a question of fact. Whether he wasn't moving at all or just pushing his hand on the ground as a reaction to the dog, it is still for a jury to decide if the duration of the bite under those circumstances was excessive.

*Bolanos* is also instructive on the issue of time. Just like *Bolanos*, we don't know the exact time. Unlike *Bolanos*, we do have a general time frame of something less than two minutes eleven seconds and probably closer to one minute and twelve seconds for the bite duration. But what *Bolanos* and other cases teach us is that the mathematical computation of this time is not what's important. If a man surrendered and the dog continued to bite him for 10 seconds more, those ten seconds would be a period of constitutional prohibition. But here we know that if a jury believes Mr. Roberts and Sergeant Gross for that matter, then there is a period of time when Plaintiff is not a threat, is subdued and yet he's being bitten hard on his right arm and as a result, is seriously injured.

> The court in *Bolanos* discussed this very issue note 5 at 28:
>> "There is merit to the officers' position that if the dog had been biting and tearing at Bain's arm for five minutes, the arm would have been shredded. <u>We do not, however, find the exact amount of time to be relevant to our analysis. The significant factor is whether the animal was allowed to continue to maul Bain after he had been subdued and presented no threat to the officers. … Bain's testimony in this case is that after he was rendered helpless and while in great pain, the officers laughed and encouraged the dog to continue its attack. It is this alleged conduct to which we refer."</u> (emphasis added)

Besides Plaintiff's testimony and that of Sergeant Gross, we also have vivid

6

photos of the injury. These photos are relevant to deciding whether the conduct of Puccio was an excessive use of force. This photographic evidence, while not dispositive, is certainly sufficient to raise a question of fact as to the severity of Plaintiff's treatment at the hands of the Puccio. *Thompson v. Douds, 852 So. 2d 299, 310 (Fla. 2nd DCA 2003.)*

Defendants' qualified immunity defense is a strawman. They argue essentially that because that there is no case exactly like this one, the law cannot be clearly established.[4] This is a misreading of the case law. In *Davis v. Williams, 451 F.3d 759, 762 (11th Cir. 2006), the court said:*

> " This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent. Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002 ) (citation omitted). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. . . . Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding."

*Accord: Priester v.City of Riviera Beach*, 208 F.3d 919 (11th cir. 2000)(no case law needed for an officer to know that dog bite of a plaintiff who is not resisting or fleeing is unconstitutional).

Is there any doubt that these defendants after *Bolanos* and other cases knew that it was clearly established law that dogs should not continue to bite suspects who have surrendered! No, for they themselves, in their own testimony agree to that principle as do the City's written procedures. (Statement of Facts 46). The issue in this case is whether Plaintiff surrendered and if so, was Puccios belief of what he saw reasonable or not.

In *Gibson v. Clarksville, 860 F. Supp. 450( m.d. Tenn. 1993),* cited by the *Bolanos court,* summary judgment was denied in that there was a question of fact whether the dog continued to bite after the suspect was subdued even though the initial use of handcuffs was proper.[5] The court reasoned, as plaintiff contends in this case, that the seriousness

---

[4] This is why Defendants defense here must fail on this motion. Defendants wrongly claim that in order for Plaintiff to defeat the qualified immunity defense, Plaintiff must find a case holding that biting for more than 1 minute and eleven seconds is an excessive use of force.

[5] Granted that Gibson is factually distinguishable in detail because Plaintiff said he was already handcuffed. However, the case does illustrate general points of law in excessive bite duration cases which are important here.

of the injuries can be a significant factor in determining whether there was an unreasonable use of force:

> "Second, given the seriousness of Gibson's multiple injuries that required two surgical procedures, material factual disputes exist as to the reasonableness of the defendant officers' use of force. In particular, there are factual disputes as to Gibson's conduct at the time of his arrest, Papastathis' use of the police dog" id at 452.

In the case at bar, the record shows and all witnesses agree this was not a minor dog bite but was a far more serious injury.

In *Gibson*, plaintiff submitted proof from an expert witness on police practices who, as here, said that the force used by the defendants was unnecessary and unreasonable. Here, we have a police practices expert who has opined that the continued and extended duration of the bite was an excessive and unreasonable use of force. See also *Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005)* (A rational jury could rely upon such police practices expert evidence in assessing whether the officers' use of force was unreasonable).

Another case relied on by the *Bolanos* court was *Kerr v. West Palm Beach, 875 F.2d 1546 (11th Cir. 1989).* Among other things, the court recognized that a bite and hold of a police dog will often result in serious injury. id at 1550. Second, the court said that although physical control is typical of dog handling, oral commands can be used to minimize injury:

> "The severity of an apprehended suspect's injuries can be reduced if the handler has complete control over the actions of his dog. With such control, the handler can recall or restrain the dog before a bite even occurs Alternately, the handler can quickly remove the dog from the apprehended suspect, minimizing the possibility that the suspect will be further injured in an ensuing struggle. Since a police dog that is apprehending a fleeing suspect is often far in front of its handler, canine law enforcement training stresses the use of oral commands, which the dog can obey even when its handler is at a distance, rather than "leash" commands, which require the officer to touch the dog or, in some instances, to pull the dog off the suspect."

In the case at bar, a jury could find Puccio did not have to wait, look, climb, wait and look again and then finally release the dog if an earlier command from the other side of the fence could have been given and serious injury avoided.

8

In another similar case, *Watkins v. City of Oakland, 145 F.3d 1087 (9th Cir. 1998),* the court held that the excessive duration and continuation of a bite after a suspect is helpless violates a clearly established constitutional right. The court affirmed the denial by the district court of the defendants' summary judgment motion finding that Watkins had raised "a genuine issue of material fact as to whether the force used against [Watkins], including allowing Nero to continue biting [him] until [he] showed his hands, was reasonable under the circumstances."

In *Watkins*, the police responded to a silent at a commercial warehouse. The officers established a perimeter because they had seen a person running within the building. There was no evidence as to whether the person was armed. Before releasing the dog, the officer gave a warning twice. Watkins did not surrender. The office released his dog that located Watkins hiding in a car and bit him. Upon arriving at the scene, the officer did not call the dog off, but instead ordered Watkins to show his hands. Watkins, recoiling from the dog's bite, failed to comply. The dog continued to bite until Watkins complied with the orders to show his hands. The officer testified that ten to thirty seconds elapsed between the order to show his hands and the time Watkins complied. He justified his delay in calling off the dog because Watkins, while resisting the dog, failed to show his hands to prove that he was unarmed. Watkins explained that he did not show his hands because he was resisting the dog and recoiling from the pain of the attack. Watkins further claims that the officer continued to allow the dog to bite him even though he was obviously helpless and surrounded by police officers with their guns drawn. The injuries were, as here, serious ones and included multiple lacerations and jagged tearing deep enough to see the tendons. Watkins required skin graft surgeries and still suffered mobility problems and complained of pain.

The defendant in *Watkins* attempted to raise the same type of straw man qualified immunity argument as here. Namely, that it was not clearly established law that it was unreasonable to require the plaintiff put his hands up before the dog was released.[6] The

---

[6] Compare: Kopf v. Wing, 942 F.2d 265, 268 (4th Cir. 1991)(unreasonable to allow a police dog to continue biting a suspect where it is unreasonable to require the suspect to put his hands up and calmly surrender while a police dog bites him)

9

court explained that Watkins' claim of excessive force was different than that described by the defendant. What Watkins argued, as does Plaintiff in the case at bar, is that the duration and extent of force applied in effecting an arrest after the officers caught up with the dog amounted to an unconstitutional application of force. *id at 1093*. The court then held that:

> "We agree that it was clearly established that excessive duration of the bite and    improper encouragement of a continuation of the attack by officers could constitute excessive force that would be a constitutional violation. Therefore, we affirm the district court's denial of qualified immunity to Officer Chew on summary judgment."

In the case at bar, Plaintiff s similarly argues that the extended duration of the bite could constitute excessive force that would be a constitutional violation. *Accord Fuller v. Cantrell, 2005 U.S. Dist. LEXIS 37014 (D. Cal. 2005)* (issue of fact whether Officer used excessive force where plaintiff and Officer disputed the circumstances under which dog was released. Plaintiff claimed he fully surrendered but the dog continued to bite).

Defendant Puccio misperceives Plaintiff's claim and the disputed facts. Puccio argues that clearly established law does not hold that the use of police dogs to bite and hold felony suspects for one minute, as opposed to thirty seconds, constitutes excessive force, citing *Quintanilla v. City of Downey, 84 F. 3d 353 (9th Cir. 1996)*.[7] First, the claim of Plaintiff is clearly established law: A dog bite of a suspect when he is subdued, not resisting and not fleeing is an excessive use of force. The mathematical proof requirement does not exist and Plaintiff does not have to meet it. See *Bolanos,* supra.

Another enlightening case is *Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005)*. First, the court pointed out the limits of audio logs because they are only a partial

---

[7] *Quintanilla* does not deal with time at all and does not stand for the cited proposition. Furrther *Quintanilla* is distinguishable in that there was a high speed chase through various residential areas, Quintanilla then threw a bottle at an officer, and vanished into a truck-yard. The dog bit Quintanilla's arms and legs as Quintanilla, in control of the dog, held it in a head-lock. The office repeatedly ordered Quintanilla to release the dog and surrender, but he refused. The officer had to drag Quintanilla out into an open area where other officers handcuffed him and the dog was removed. It was this "scuffle" with the dog that lasted approximately one minute. Quintanilla required medical treatment but suffered no serious injuries. This is not the case at bar by a long stretch.

10

recording of the encounter and therefore the record will remain unclear as to the duration of the entire encounter.  In the case at bar, the biting to the right arm may very well have begun before the first scream is heard on the audio log.  Second, the Court stated that the issue of excessive force is often one that should be left to the fact finder "(b)ecause [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom." Similarly, in *Vathekan v. Prince Geoges Cnty, 154 F.3d 173( 4th Cir 1998)*, the court cautioned that where facts are disputed as to what happened in the incident, qualified immunity is not ripe for summary judgment. The court said;

> If the facts of this case were undisputed, we would proceed by applying the clearly established law to determine whether Simms is entitled to qualified immunity. A factual issue critical to resolution of this issue is contested, however. When resolution of a case depends on determining what actually happened, "the issue is inappropriate for resolution by summary judgment." *Rainey v.* [*180] *Conerly, 973 F.2d 321, 324 (4th Cir. 1992)*. This is because "disputed facts are treated no differently in this portion of the qualified immunity analysis than in any other context." *Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995)* (citing *Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992))*. Accordingly, "summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants." *65 F.3d at 359-360* (citations omitted)."

In the case at bar there is a key instance where Plaintiff and Puccio dispute the nature Plaintiff's conduct during the time that he was bitten by the canine and they also dispute whether any warnings were given.  This dispute as to what happened on the scene is sufficient to preclude summary judgment.

The case of *Lafavors v. Jenne 2006 U.S. App. LEXIS 2633(11th cir.2006)* although distinguishable factually,[8] provides guidance on a number of issues.  The court agreed, as does the plaintiff in the case at bar, that being bitten by a police dog while resisting arrest does not per se violate a clearly established constitutional right. However, the court recognized on the other hand, the precise claim that the Plaintiff is making in this case,

---

[8] Plaintiff had 12 outstanding warrants, multiple known prior escape attempts and actively resisted arrest.

11

namely: that a police dog bite after a defendant has been subdued, surrendered, or has ceased resisting or fleeing would violate the suspect's constitutional rights, citing *Kerr, 875 F.2d at 1552.* Unlike *Lafavors*, however, *Kerr* and the Plaintiff were not being sought on multiple felony warrants and were not actively resisting arrest at the moment the dogs bit them. See also *Priester v. Riviera Beach*, 208 F.3d 919, 926-27 (11th Cir. 2000).

When carefully reviewed, the defendant's arguments are based on ignoring what the Plaintiff and Sergeant Gross have testified to: lack of any resistance or flight. The defendants' claim that "its not clear that the attack continued past a point of when plaintiff was flight or threat risk" improperly ignores Plaintiff's testimony that the risk ended after the bite to the right arm began. Similarly, the claim that nothing in Plaintiff's conduct provided an objective manifestation of surrender or that he was no longer a flight or threat risk also ignores Plaintiff's and Gross' testimony in the record. Then we also have the defendants' argument that Plaintiff's hands weren't visible and so maybe this was not surrender. It is for a jury to decide, where one of the arms is in the mouth of the dog and the other hand is on the ground, whether Puccio's belief that Plaintiff remained a risk was a reasonable one under these circumstances. This is especially true in light of the undisputed record that he was never told to show his hands to Puccio.

Defendants rely heavily on *Samarco v. Neumann, 44 F. Supp. 2d 1276 (D. Fla. 1999)* which is factually and procedurally distinguishable on a number of points. First, *Samarco* involved a crime of violence and a suspect with known violent history. Second, the suspect was actually hiding in a housing complex where he actually threatened violent acts and was armed. Third, the canine officers, without dispute, gave him warnings and when bitten, Samarco actively fought with the dog with a pair of scissors he was carrying. These facts present a drastically different picture than the case at bar.

There were also key procedural distinctions. Samarco argued incorrectly on the qualified immunity issue that police use of excessive force is per se constitutional violation which of course the court disagreed with because it was such a general claim. The defendant's description of the qualified immunity issue (whether the use of police dogs to bite and hold felony suspects constituted excessive force) was also wrong and

12

distinguishable from this case. Plaintiff makes no such broad claims in the case at bar. For all of the above reasons, the court's analysis of the *Graham v. Connors* factors is irrelevant to our case.

      A further distinction was that Samarco never argued or proved what Plaintiff does here which is that the bite went on too long or he was bitten when he was not fleeing or resisting. Therefore, the court dealt with it as dicta in a footnote 6. The court agreed, as Plaintiff does here, that it was clearly established that excessive duration of a bite could constitute excessive force that would be a constitutional violation. However, in *Samarco* besides all of the other distinctions set out above, there was no proof that the attack went on too long. Samarco was unable to testify how long the attack lasted and the radio transmission showed about five minutes from the time when Samarco was still at large until fire rescue arrived. The case at bar is factually different because Samarco could not prove, as the Plaintiff here has shown, that the dog bit him while he was not resisting nor fleeing. Even if *Samarco* was such a case, the comments of the court were dicta on an issue that was not raised on the motions before it.

      Defendant argues that Plaintiff claims that simply because he sustained "some" injuries, the force used was excessive as a matter of law. This is not and has never been Plaintiff's claim. Moreover, the evidence shows something far more serious than "some" injury with all of the witnesses agreeing this was not a minor injury. What Plaintiff has proven and creates a question of fact, along with all of the other evidence, cited is that a serious injury occurred because of the extended nature of the bite when plaintiff was not resisting or a flight risk. (Plaintiff's Statement of Facts # 32 and 40-45). [9]

      In sum, summary judgment on the 1983 and both battery claims should be denied in that there are disputed issues of fact as to whether the force was excessive and whether Puccio's belief as to the conclusions to be drawn from those facts and his actions were reasonable. In this case, what happened and the key circumstances are in dispute. If the circumstances are found by a jury to be that the bite went on for any period of time after Plaintiff was subdued, the jury can find excessive force, a battery, a 1983 violation and no immunity because <u>that</u> right was clearly established.

---

[9] *Epstein, supra, at 277 F. Supp. 2d at 1276* is inapposite (see p.2 supra of the Memo).

### III.  PUCCIO'S MOTION FOR SUMMARY JUDGMENT ON COUNT VII (BATTERY) SHOULD ALSO BE DENIED IN THAT THERE ARE DISPUTED QUESTIONS OF FACT WHETHER PUCCIO ACTED IN A MANNER EXHIBITING WANTON AND WILLFUL DISREGARD OF HUMAN RIGHTS OR SAFETY:

Under 768.28 (9)(a), Florida Statues,  there is no immunity for a police officer who "…acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Puccio's argument that the "the veil of immunity is lifted only where the employee's act fell outside the scope of employment" is wrong since it is based on the 1983 version of the statute.  For this same reason, *Hennagan v. Department of Highway & Motor Vehicles, 467 So.2d 748 (Fla. 1st DCA 1985),* is inapplicable.  Under the present version of the statute an officer who may be acting in the course and scope of employment but yet acts in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property has no immunity. See *Richardson v. City of Pompano Beach, 511 So. 2d 1121 (Fla. 4th DCA 1987).*

The issue of whether an officer, acting within the course and scope of employment, has acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property has been held to be a factual one for the jury. *Williams v. City of Daytona Beach, 2006 U.S. Dist. LEXIS 5766 (m.d. Fla. Dist. Ct. 2006); Thompson v. Douds, 852 So. 2d 299(Fla. 2nd DCA 2003); Columbia by the Sea, Inc. v. Petty, 157 So. 2d 190 (Fla. 2d DCA 1963)(* Upon consideration of all the testimony, the conflicting statements as to facts and the varying inferences and conclusions possible, it would seem the question was one best submitted to a jury).

In *Williams v. City of Daytona Beach*, as in the instant case, there was a genuine issue of material fact as to whether Defendant officers acted in a manner exhibiting a wanton and willful disregard of human rights for their actions after Plaintiff had been arrested, handcuffed, and subdued.  Plaintiff testified that Defendant officers dragged him

14

out of the police vehicle after he was already handcuffed and under arrest and that the officers kicked, punched, choked, and beat him. The court reasoned that this level of force applied to Plaintiff by the officers could show a wanton and willful disregard for human rights.

In *Thompson v. Douds*, the Court held that although there was no evidence that the individual officers acted in bad faith or with a malicious purpose, there was a genuine issue of material fact as to whether the individual officers' actions constituted a wanton and willful disregard of human rights. Therefore, the trial court erred in granting final summary judgment on this basis.  The court cited an important piece of evidence for its decision. The level of force applied to Plaintiff the officers was evidenced by photographs depicting severe injuries.  In the case at bar, there are also photographs showing a severe right arm injury along with medical evidence as well.  Although the Court said that photographic evidence was not dispositive of any issue, it certainly was sufficient to raise a question of fact as to the severity of Plaintiff's treatment at the hands of the individual officers.  It continued: "To ignore the photographic evidence simply because the victim is unable to give verbal testimony that refutes the officers' version of events would not serve either public policy or justice."

In the case at bar, there is more evidence of wanton and willful disregard of human rights than merely the scene photos, as graphic as they are. Here, we have Plaintiff's testimony also of the laughter and verbal encouragement of the dog bite as he lay on the ground, not fleeing and not resisting.   If a jury chooses to believe this evidence, then the we have much more than the excessive force of a exceedingly slow response of the canine officer.  What we have now is a street justice unbecoming to officers and evincing nothing less than wanton and willful disregard of Plaintiff's basic rights as a human being. Therefore, under these disputed facts in light of the case law, summary judgment should be denied as to Count VII for battery.

**IV.   F.S. 776.085(1) DOES NOT APPLY AS A MATTER OF LAW TO THIS ACTION AND PROVIDES NO BASIS FOR SUMMARY JUDGMENT TO EITHER DEFENDANT ON THE TWO PENDING STATE LAW COUNTS[10]:**

---

[10] This state statute could not constitutionally bar Plaintiff's federal claim under 42 USC 1983.

15

Florida Statutes, 776.085(1), provides that "[i]t shall be a defense to any action for damages for personal injury ... that such action arose from injury sustained by a participant <u>during the commission or attempted commission of a forcible felony</u>." (emphasis added).

First and foremost, Plaintiff's injury was not sustained <u>during</u> the commission or attempted commission of a forcible felony. When the Plaintiff was bitten by Puccio's dog, he was not committing a burglary. The crime was over and all elements of the crime were completed. *Florida Statutes 810.02 (1) (b)* defines burglary as:

> "Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter. "

The opinion cited by the City, *Wagner v. State*, 921 So.2d 38, 40-41 (Fla. 4th DCA 2006), has nothing whatsoever to do with this statutory defense. Rather, *Wagner* deals with the issue of when a murder must occur to be included in a felony murder charge and so tells us nothing about this statutory defense and its application.

A review of those cases actually interpreting the statute fully supports Plaintiff's position that this defense does not apply. *King v. Shoar, 2007 U.S. Dist. LEXIS 51500 (M.D. Fla. 2007; Copeland v. Albertson's, Inc., 947 So. 2d 664, 665 (Fla. 2nd DCA 2007(*aggravated assault <u>inside the store</u> did not support the defense to a claim for an injury in the parking lot); *cf. Gonzalez v. Liberty Mutual, 634 So. 2d 178(Fla. 3rd DCA 1994*(statute properly applied to criminals who were shot on the premises where and when they were committing the crime).

The court in *King v. Shoar* squarely held that the statute does not apply in this case:

> "While the commission of a forcible felony is a bar to a wrongful death action, the injury must be sustained *during* the commission or attempted commission of that crime. <u>Fla. Stat. § 776.085</u>. Thus, an injury sustained after the forcible felony was completed would not support this defense. Cf. *Copeland v. Albertson's, Inc., 947 So. 2d 664, 665 (Fla. 2nd DCA 2007* (finding that <u>section 776.085</u> was inapplicable to injuries sustained *after* commission of aggravated assault). The evidence presented to the Court shows no question that Deputy Zufelt used his taser on King after the alleged forcible felony occurred. Since this personal injury did not occur *during* the alleged commission of a forcible felony, the Court finds that <u>section 776.085</u> is not a bar to Plaintiffs action at this time."

16

Since the dog bite occurred after the burglary and outside the school where it took place, Plaintiff's injury did not occur *during* the commission of a forcible felony and the defense is inapplicable.

Second, this statute is part of the whole justifiable use of force /stand your ground law which clearly relates to defense of one self or ones home or property which this dog bite has nothing to do with.  Third, the last sentence of *F.S. 776.08* states that forcible felony includes "..any other felony which involves the use or threat of physical force or violence against any individual." Therefore, it can be argued that the specific list of crimes in the statute, including burglary, are viewed to represent those which necessarily involve the use or threat of physical force or violence against any individual.  However, since burglary of an unoccupied structure does not "involve the use or threat of physical force or violence against any individual," it is questionable whether the legislature intended to include burglary of an unoccupied structure within the general term burglary in the forcible felony statute.

Based on the above authorities, the defense under Florida Statutes, 776.085(1) does not apply to this case and provides no basis for summary for either defendant.

**V. CONCLUSION:**

Summary Judgment should be denied on all three pending counts based on the facts and authorities cited above.  There are material issues of fact that should be decided by a jury.  The issue of excessive force, applicable to all three counts, ultimately depends on a factual determination of the circumstances, that is, what happened. On this point, there is more than sufficient evidence to leave the issue for a jury to decide whether this dog bite went on for longer than it should have under the circumstances.

Plaintiff says that while his right arm was being bitten, he was not resisting, fleeing or even moving, save for the reaction of his body to the force of the bite itself. His subdued state of surrender during this time is corroborated by the disinterested neutral witness Sergeant Gross.  Plaintiff denies hearing any verbal command from Puccio telling him what he should do or what he should not do to end the bite.  The photographic and medical evidence show injuries far beyond minor.  A well qualified expert, Mr. Scott, concluded that there was excessive force because the bite continued beyond the point of

reasonable and beyond what was necessary to effect an arrest. Scott maintained this opinion even assuming the hand and body movements of Plaintiff described by Puccio. He would not view those movements as creating a reasonable basis for Puccio's actions.

On the qualified immunity defense of Puccio on the 1983 claim, plaintiff has shown that this issue is not one of finding the exact same case to determine the clearly established law. Under *Bolanos* and other cases, Plaintiff need not precisely quantify the exact duration of time his arm was clenched by the dog's teeth. It is undisputed that a reasonable police officer may not continue a dog bite when the suspect has ceased resisting, stopped fleeing and presents no threat. Whether Plaintiff's situation fits within that claim is a question for the jury to decide.

On the battery count against Puccio individually, there are questions of fact whether the officer evinced a willful disregard of Plaintiff's human rights. On this point, a jury can consider the photos of the injury and Plaintiff's testimony concerning the laughter and encouragement from the other officers and all of the other evidence in the case.

Finally, as to the state law claims, since this dog bite injury did not, without question, occur during the commission of a felony, the statutory defense does not apply.

WHEREFORE, based on the facts cited in his STATEMENT OF FACTS and the law cited in this MEMORANDUM, Plaintiff respectfully requests that this court deny the defendants' motions in all respects.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on December 31, 2007, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM /ECF.

        By: s/ <u>David L. Perkins, Esq.</u>
           DAVID L. PERKINS
           Florida Bar No. 264911
           Email: davidp@hlalaw.com

           HOFFMAN, LARIN & AGNETTI, P.A.
           909 North Miami Beach Boulevard, Suite 201
           Miami, FL 33162
           Telephone: 305.653.5555
           Attorneys for Plaintiff